UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN LINDBERG MCBRIDE, | Case No.   1:25-cv-00444-KES-EPG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED |
| v. | |
| PETE HEGSETH, et al. , | (ECF No. 12) |
| Defendants. | OBJECTIONS IF ANY, DUE WITHIN THIRTY DAYS |

## I.   INTRODUCTION

Plaintiff Kathryn Lindberg McBride proceeds *pro se* in this civil action alleging that Defendants—who are various government officials—violated her rights in connection with her prior employment as a dual-status military/civilian technician in the California Army National Guard (CNG). (ECF No. 1).

Defendants have moved to dismiss this case (1) for lack of subject matter jurisdiction under the *Feres* doctrine[1] and (2) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12). The assigned District Judge referred the motion to the undersigned on September 8, 2025. (ECF No. 13).

After reviewing the parties' briefing, the Court will recommend that Defendants' motion to dismiss be granted and that this case be dismissed with prejudice and without leave to amend.

---

[1] *See Feres v. United States*, 340 U.S. 135 (1950).

1

## II.      SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff filed her complaint on April 17, 2025, suing (1) the Secretary of the Department of Defense (Pete Hegseth); (2) the Secretary of the Army (Dan P. Driscoll); (3) the Chief of the National Guard Bureau (Steven S. Nordhaus); (4) NGB EEO Complaints Management and Adjudication Office Former Chief (Derrick D.T. Allen); (5) and the California Army National Guard Adjutant General. (ECF No. 1, p. 16).

She brings her claims under 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)), Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act of 1967 (ADEA). (*Id.* at 17).

Plaintiff alleges that she was a federal employee "GS-12 Maintenance Test Pilot Supervisor employed at the Fresno Army Aviation Flight Activity, 5168 East Dakota Avenue, Fresno." (*Id.*). She "had an impeccable 30 years with the California National Guard" during which time she, among other things, "[s]he flew Search and Rescue, flew fire suppression with Cal Fire, earthquake support, operated airfields, and performed numerous medical evacuations." (*Id.*).

Following "comments to her supervisor that she had never witnessed in her aviation career a reluctance by certain employees to follow procedures, specifically aviation test flight procedures, FAA flight regulations, and safety procedures," Plaintiff brought her concerns to the [Equal Employment Opportunity] EEO office" and "[s]he was permitted to file a formal complaint."[2] (*Id.*).

Plaintiff contends that the NGB failed to follow certain requirements relating to her EEO complaint, including completing an investigation within 180 days of the filing of the complaint, "years passed and still the NGB would neither accept nor dismiss her complaints even though the CNG EEO office had already determined that her complaints were civilian and not military." (*Id.* at 18).

---

[2] Plaintiff does not elaborate on her interactions with her supervisor in her complaint. However, she attaches a document labeled "EEO Complaint" to her complaint, in which she states that she experienced "hostile, harassing, and degrading comments" from a superior named Johnson in front of her subordinate named Hanson in January 2007. (ECF No. 1, p. 29). The dispute began over the "contents of a regulation." (*Id.*). After disputing the regulation, Johnson, among other things, allegedly began harassing Plaintiff because she was using flash cards to study an operator's manual. (*Id.*).

Further, after filing her EEO complaint, "the reprisal, harassment and discrimination happened much more frequently by her superiors, coworkers, and subordinates," including the following:

> Her supervisor posted a memorandum stating he would not let her fly with those individuals named in the complaint. He required her to travel 180 miles to a different facility to maintain her qualifications. Later, she was required to undergo a mental health evaluation and was no longer allowed to fly until it was done. The flight surgeon informed Lindberg that the mental health evaluation was because she filed the EEO complaint, and there was a big investigation, attorneys are involved, and a lot of people have their backs against the wall. She was removed from her aviation office and aviation duties and transferred to a building down the street to do food service and supply work or given nothing to do. She was offered a small storage closet with no phone or computer for her office but had provided her with a cot to sleep on. She was alienated from aviation duties.

(*Id.*).

Plaintiff asserts that "someone at the CNG violated its own regulation by forcing Lindberg to transfer from her military unit and forged her signature authorizing the transfer," which "transfer was a military demotion." (*Id.)*. Ultimately, her "military employment," and later "federal employment," were terminated. (*Id.)*.

The complaint includes a timeline of events—spanning February 2008 to January 2025—that Plaintiff asserts shows "how she was intentionally denied due process to a timely, fair, and impartial investigation." (*Id.*). Much of the timeline concerns events related to Plaintiff's EEO proceedings. A January 17, 2025 Equal Employment Opportunity Commission (EEOC) decision that Plaintiff attaches to her complaint (and also refers to in her complaint) summarizes the pertinent EEO proceedings as follows.[3] (*Id.* at 22, 23).

Plaintiff filed a formal EEO complaint on July 8, 2008, complaining about various discrimination in connection with her employment, including demeaning comments, loss of a supervisory position, and involuntary reassignments. (*Id.* at 23–24). "It took the parties several years to decide what allegations would be accepted and investigated." (*Id.* at 24). "[T]he Agency conducted what it termed as an 'AR-15-6' military investigation and concluded that Complainant failed to prove her case," and this "process provided no recourse beyond the Adjutant General of

[3] Defendants do not dispute the history of the EEO proceedings cited in the EEOC decision; rather, they extensively cite this decision in the procedural history section of their motion to dismiss. (ECF No. 12-1, p. 5).

3

the CANG." (*Id.* at 24). Plaintiff requested a hearing but "the AJ initially assigned to the case dismissed the complaint as 'nonjusticiable,' concurring in the Agency's assessment that the incidents at issue arose from military employment." (*Id.*). However, on appeal, the EEOC Commission "reversed the AJ's dismissal and reinstated the complaint" with "[t]he Commission [finding] that the incidents at issue arose from Complainant's civilian position, not her military duties, and that as such, her complaint was to be processed pursuant to 29 C.F.R. Part 1614." (*Id.*). However, the Agency declined to participate in further proceedings, disputing that the Commission had jurisdiction over the case, which ultimately led to a default judgment in Plaintiff's favor. (*Id.* at 24–25).

Plaintiff then "appealed the Agency's failure to take any action with regard to the relief ordered by the AJ" but the Agency did not respond to the appeal. (*Id.* at 25). After concluding "that any further efforts in the administrative process [would be] futile," the Commission dismissed the appeal and notified Plaintiff of her right under 29 C.F.R. § 1614.503(g)[4] to seek judicial review. (*Id.* at 26).

Citing the EEO proceedings, Plaintiff alleges that the National Guard Bureau (NGB) failed to adequately investigate her claims or participate in the proceedings. (*Id.* at 19–22). Elsewhere, she generally argues that the NGB improperly relies on the *Feres* doctrine. For example, she alleges that, "around 2009 . . . NGB legal staff conspired to do away with any federal civilian technician's rights to Title VII protections" and created a Power Point presentation with the aim of "convince[ing] nonmilitary judges that National Guard dual status technicians are always under the jurisdiction of active-duty military courts" and to "use the Feres doctrine to confuse the courts." (*Id.* at 22).

Elsewhere in the timeline of events used to support Plaintiff's assertion that she was denied due process, she cites alleged instances of retaliation, harassment, and discrimination.

---

[4] This provision states as follows: "Where the Commission has determined that an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the Commission shall notify the complainant of the right to file a civil action for enforcement of the decision pursuant to Title VII, the ADEA, the Equal Pay Act, the Rehabilitation Act, the Genetic Information Nondiscrimination Act, or the Pregnant Workers Fairness Act and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedure Act, 5 U.S.C. 701 et seq., and the mandamus statute, 28 U.S.C. 1361, or to commence de novo proceedings pursuant to the appropriate statutes." 29 C.F.R. § 1614.503(g).

4

Among other things, she alleges that her aviation incentive pay was terminated on May 15, 2010, based on false information relating to her vision; she was terminated from her military employment on August 31, 2011, due to a fraudulent claim of her having an eye vision disqualification; and she was terminated from her federal employment on April 20, 2012, based on eye-related medical issues. (*Id.* at 19, 20).

As for relief, Plaintiff seeks monetary damages, which appear to be the $1.1 million that Plaintiff sought in her EEO proceedings. (*Id.* at 6).

### III.    MOTION TO DISMISS

Defendants filed their motion to dismiss Plaintiff's complaint on September 5, 2025. (ECF No. 12). Plaintiff filed her opposition on September 22, 2025, and Defendants filed a reply on September 30, 2025. (ECF Nos. 15, 17).

On October 8, 2025, Plaintiff filed a sur-reply to Defendants' reply (ECF No. 18). As Local Rule 230(m) notes, "[a]fter a reply is filed, no additional memoranda, papers, or other materials may be filed without prior Court approval [absent certain exceptions not applicable here]." Although Plaintiff's sur-reply was not authorized, the Court has reviewed and considered the arguments in it.

The Court summarizes the parties' arguments in their briefs below.[5]

#### A.  Defendants' Motion to Dismiss

Defendants' motion to dismiss this case for lack of subject matter jurisdiction relies on the *Feres* doctrine. (ECF No. 12-1, pp. 8–12). "Under the *Feres* doctrine courts lack subject matter jurisdiction to adjudicate claims by members of the armed services where the injuries complained of arise out of or are in the course of activity incident to service." *Bon v. United States*, 802 F.2d 1092, 1094 (9th Cir. 1986) (internal quotation marks and citation omitted). Citing Ninth Circuit authority, Defendants argue that *Feres* extends to National Guard dual-status technicians like Plaintiff and the challenged actions were incident to Plaintiff's military service.

Additionally, Defendants argue that Plaintiff's § 1983 and *Bivens* claims fail because the events relating to the EEO proceedings do not give rise to a due process claim and she does not allege that any Defendant was personally involved in the alleged violations of her rights. (ECF

---

[5] The Court addresses only the arguments material to resolving this case.

5

No. 12-1, pp. 7-8).

### B. Plaintiff's Opposition

Plaintiff's opposition asserts that she can prove the merits of her claims. (ECF No. 15). As to the *Feres* doctrine, Plaintiff argues that it does not bar her claims and cites a host of cases discussing the doctrine. (*Id.* at 10–19). She also contends that "important context," *i.e.*, the Defendants' motivations for violating her rights, makes *Feres* inapplicable to her case. (*Id.* at 3).

Additionally, Plaintiff seems to ask the Court to enforce the prior EEOC decision granting her default judgment. (*Id.* at 20 – "Does this Court have jurisdiction to enforce EEOC's decisions that awarded Lindberg damages and attorney fees?").

Lastly, Plaintiff argues that Defendants are liable under § 1983 and *Bivens* for the wrongful actions of their employees. (*Id.* at 10).

### C. Defendants' Reply

Defendants argue that Plaintiff's summary of "a hodgepodge of cases" fails to show that the *Feres* doctrine is inapplicable to her. (ECF No. 17, p. 3). Further, a person's alleged motivations cannot be considered under the *Feres* doctrine. (*Id.* at 1).

Additionally, Defendants contend that, while the EEOC can order federal agencies to pay damages, "the *Feres* doctrine prohibits *enforcement* of awards for dual-status technicians contesting matters integrally related to the military." (*Id.* at 4) (emphasis added).

Lastly, Defendants repeat their arguments for dismissal of Plaintiff's § 1983 and *Bivens* claims, most pertinent here, arguing that personal involvement is required for such claims and they were not personally involved in the alleged deprivations of Plaintiff's rights.

### D. Plaintiff's Sur-reply

Plaintiff's sur-reply maintains that *Feres* does not bar review of her complaint. (ECF No. 18). She asserts that she was not "under military jurisdiction" at the time of the relevant events. (*Id.* at 2) (internal quotation marks and citation omitted).

## IV.    ANALYSIS

### A. Legal Standards

Defendants' motion to dismiss this case for lack of subject matter jurisdiction based on the *Feres* doctrine implicates Federal Rule of Civil Procedure 12(b)(1), which permits a party to

6

move to dismiss a case for lack of subject matter jurisdiction. *See Jackson v. United States*, 110 F.3d 1484, 1486 (9th Cir. 1997) ("A motion to dismiss pursuant to the *Feres* doctrine, even if raised after the answer to the complaint, should be treated as a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) rather than as a motion for summary judgment.").

While the Federal Government generally has sovereign immunity from suit, "[t]he passage of the Federal Tort Claims Act (FTCA) in 1948 resulted in a broad waiver of the Federal Government's sovereign immunity." *Costo v. United States*, 248 F.3d 863, 866 (9th Cir. 2001). However, this waiver of sovereign immunity in the FTCA contained an exception relating to "combatant activities," which "exception was broadened significantly by the Supreme Court" in *Feres* when it held "that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* (internal quotation marks and citation omitted).

Although the *Feres* doctrine—sometimes called the doctrine of intramilitary immunity—arose as an exception to the United States's waiver of immunity, it also has a jurisdictional underpinning because "the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011) (citation omitted); *see Stauber v. Cline*, 837 F.2d 395, 398 (9th Cir. 1988) ("Although *Feres* itself did not compel dismissal for lack of subject matter jurisdiction, such a result comports with the development of the doctrine, which has grown as a judgemade exception to the Federal Tort Claims Act's (FTCA's) waiver of sovereign immunity.").

Further, although the *Feres* doctrine initially concerned the FTCA, its reach has significantly broadened and applies to claims brought under § 1983, *Bivens*, Title VII, and ADEA. For example, in *Bowen v. Oistead*, 125 F.3d 800 (9th Cir. 1997), the Ninth Circuit stated as follows:

> The Supreme Court has held that *Feres* applies not only to tort actions brought under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., but to *Bivens* actions as well.
>
> . . . .

> We agree with the First Circuit and believe that insofar as the *Feres* doctrine extends to the state National Guard units, it shields state military officers from constitutional claims brought under section 1983 to the same extent that it protects federal military personnel from defending against *Bivens* actions raising the very same claims.

*Id.* at 803 and 803 n. 2 (citations omitted)

Moreover, the Ninth Circuit has applied the *Feres* doctrine to Title VII claims, *Hodge v. Dalton*, 107 F.3d 705, 710 (9th Cir.1997), and other courts have applied it to ADEA claims, *see, e.g.*, *Flowers v. First Hawaiian Bank*, 289 F. Supp. 2d 1213, 1217 (D. Haw. 2003), *aff'd sub nom. Flowers v. U.S. Army, 25th Infantry Div.*, 179 F. App'x 986 (9th Cir. 2006). In short, "[t]he doctrine is . . . applicable whenever a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States." *Hodge*, 107 F.3d at 710 (internal quotation marks and citation omitted).

Because the injury that a plaintiff suffers must be incident to military service for the *Feres* doctrine to apply, courts consider four factors to make this determination:

> (1) the location where the activity giving rise to the injury occurred; (2) the duty status of the plaintiff at the time of activity giving rise to the injury; (3) the benefits accruing to the plaintiff because of his status as a service member; and (4) the nature of the plaintiff's activities at the time of the activity giving rise to the injury.

*Jackson v. Tate*, 648 F.3d 729, 733 (9th Cir. 2011).

Defendants' motion to dismiss is also based on Rule 12(b)(6), which permits dismissal based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when a plaintiff pleads facts that permit the court to reasonably infer the defendant's liability for the alleged misconduct. *Id.* A complaint does not suffice if it offers only "labels and conclusions," a "formulaic recitation of the elements," or "naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

When ruling on a motion to dismiss, a court must accept all well-pleaded factual allegations as true and construe all inferences in the light most favorable to the non-moving party. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). A court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). Furthermore, although *pro se* pleadings are construed liberally, *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010), a court "may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992), *as amended* (Oct. 9, 1992) (citation omitted).

### B.  *Feres* Doctrine

The Court will recommend that this case be dismissed under the *Feres* doctrine because the alleged injuries that Plaintiff suffered were incident to her military service.

There is no dispute that Plaintiff was a dual-status military/civilian technician working for the CNG.  Importantly, "[i]t is beyond question that the *Feres* doctrine generally applies to claims brought by National Guard members" and "dual-status employees of the National Guard." *Stauber*, 837 F.2d at 396, 399.

It is true that there is an exception when the challenged actions are not incident to the employee's military service. *See Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995) ("Because Guard technicians are in a hybrid job entailing both civilian and military aspects, we conclude that Title VII coverage of civilians employed by the military encompasses actions brought by Guard technicians except when the challenged conduct is integrally related to the military's unique structure."). Here, the challenged actions relate to Plaintiff's not being allowed to fly with certain persons, her requirement to travel to a distant location to maintain her qualifications, her requirement to undergo a mental health evaluation and not being able to fly until it was done, her transfer to a different office with different duties and accommodations, the lack of a proper investigation into her complaints, termination of her aviation incentive pay, and her eventual termination from employment.

Considering the four *Feres* factors above, the allegations in the complaint all demonstrate that the challenged actions relate to Plaintiff's military service. Among other things, Plaintiff

states that she was "employed at the Fresno Army Aviation Flight Activity," that she received a "military demotion" from her "transfer from her military unit," and she was "terminated [from] her military employment." (ECF No. 1, pp. 17, 18). Moreover, the attached documents relating to her EEO proceedings indicate that the persons who allegedly subjected her to retaliation, discrimination, harassment, or otherwise unfair treatment were military personnel. (*See id.* at 29, 26 (appearing to refer to a chief warrant officer 4 by using the term "CW4"), 33 (appearing to refer to a lieutenant colonel by using the term (LTC))). Moreover, courts have determined that similar allegations warrant application of the *Feres* doctrine. *See Bowen*, 125 F.3d at 803, 805 (concluding that claims concerning "wrongful termination of employment [and] denial of administrative due process" were barred by *Feres* doctrine); *Mier*, 57 F.3d at 750, 751 (9th Cir. 1995) ("Guard technician's challenge to a military transfer is nonjusticiable . . . . Guard technicians' challenges to discharge by the Guard and termination from technician employment are nonjusticiable . . . ." "Investigation is an act central to the military's unique concerns regarding discipline and control.").

Moreover, none of Plaintiff's cited authority supports the proposition that the actions she complains of fall outside the *Feres* doctrine; rather, some of the authority even undermines her position (*e.g.*, *Mier v. Owens* cited above).[6] While Plaintiff generally asserts that she was not on military duty at the time of the incident, as explained above, the allegations in her complaint show otherwise. (ECF No. 18, p. 2).

Plaintiff also characterizes the actions at issue as "unlawful." (*See id.* at 1). However, the merits of Plaintiff's claims are not before the Court because the *Feres* doctrine bars intrusion into military matters. *See Zaputil v. Cowgill*, 335 F.3d 885, 887 (9th Cir. 2003) ("The issue before us is not whether the orders issued to Zaputil were lawful, unlawful, or otherwise, and therefore we express no opinion on whether a unit of the Air National Guard may call up a member of the Air Force Reserve. Under the *Feres* doctrine, military service personnel simply do not enjoy a federal tort remedy for damages caused by even indisputably erroneous military decisions and orders.").

---

[6] Moreover, to the extent that Plaintiff relies on authority critical of the *Feres* doctrine to ask the Court to deviate from the doctrine, the Court cannot do so. (ECF No. 15, pp. 17–18); *see Bosh v. United States*, 831 F. App'x 834, 835 (9th Cir. 2020) (unpublished) ("Finally, the Boshes request that we make an exception to *Feres*. We have no authority to depart from controlling precedent, so we must decline.").

Similarly, the motivations of the persons allegedly violating her rights—for example by "fraudulently" relying on eye-related medical information to terminate her employment—are not before the Court. (ECF No. 1, p. 20); *see Murphy v. United States Air Force*, No. 3:18-CV-1506-JR, 2019 WL 7304989, at *6 (D. Or. Oct. 1, 2019), *report and recommendation adopted*, No. 3:18-CV-1506-JR, 2019 WL 7188569 (D. Or. Dec. 26, 2019) ("Plaintiff asserts that because he alleges the commanding officers undertook efforts to react to a report 'that was fraudulent,' their actions are somehow removed from the Feres doctrine. However, plaintiff is challenging official actions by his commanding officers based on plaintiff's actions while on duty. If a service member could avoid the Feres doctrine simply by asserting the act for which he was disciplined while on duty did not happen, then the doctrine would be eviscerated by nearly every challenge to disciplinary action undertaken by the military.").

Lastly, Plaintiff appears to ask the Court to enforce the EEOC's prior award. (ECF No. 15, p. 20). However, as one court has explained, while the EEOC may have granted Plaintiff relief, that does not mean that the Court can enforce it when her claims are otherwise barred by the *Feres* doctrine:

> In short, dual-status military technicians such as Plaintiffs risk an uncertain outcome when making complaints to the EEOC. The EEOC will investigate their claims, because they are civilian employees, and will potentially grant relief. As here, the military agencies may then refuse to comply, and if those dual-status military technicians go to court to enforce the EEOC's ordered relief, they may be met with the *Feres* doctrine precluding any judicial action in their favor.

*Neville v. Burrows*, No. CV 22-3246 (RC), 2024 WL 578986, at *11 (D.D.C. Feb. 13, 2024), *aff'd sub nom. Neville v. Lucas*, No. 24-5103, 2025 WL 1122199 (D.C. Cir. Apr. 16, 2025).

Accordingly, because the *Feres* doctrine applies to Plaintiff's claims, this Court lacks subject-matter jurisdiction over this case and it must be dismissed with prejudice. *Bosh*, 831 F. App'x at 834 n.1 (addressing *Feres* bar and noting that "[d]ismissals for lack of subject matter jurisdiction ordinarily must be without prejudice. But where, as here, the bar of sovereign immunity is absolute, dismissal with prejudice is permitted") (internal quotation marks and citation omitted).

\\\

\\\

11

### C. Section 1983 and *Bivens* Claims

Although it is not entirely clear, it appears that Plaintiff is also asserting due process claims related to the EEO proceedings taking place after her discharge from the military. Even if such claims could potentially fall outside the *Feres* doctrine, the Court recommends dismissing them as well for failure to state a claim.

Plaintiff alleges that "she was intentionally denied due process to a timely, fair, and impartial investigation" and then she includes a timeline of various events primarily relating to her EEO proceedings. (ECF No. 1, pp. 18–22). Within this timeline, Plaintiff states that she was discharged from her military employment on August 31, 2011, and her federal employment on April 20, 2012. (*Id.* at 20).

As an initial matter, Plaintiff does not specify how she was denied due process, Rather, it appears that Plaintiff's claims stem from the Defendants' decision not to participate in the EEO proceedings, leaving Plaintiff with a default judgment. However, as Defendant generally argues, this does not give rise to a due process claim. (ECF No. 12-1, p. 8); *cf. Freeman v. Beverly*, No. 8:19-CV-01784PX, 2020 WL 2747392, at *4 (D. Md. May 27, 2020) ("Freeman also appears to raise a Fourteenth Amendment due process claim based on the EEOC's denial of his requested relief. This claim too fails as a matter of law. Because an EEOC determination is appealable to the U.S. District Court, [and] a plaintiff whose claim the EEOC denied still has a vital federal remedy[,] due process does not furnish a basis for jurisdiction based on allegations that the EEOC improperly investigated and dismissed a charge.") (internal quotation marks and citation omitted).

Additionally, such a claim is subject to dismissal because she fails to make any specific allegations that the named Defendants personally deprived her of due process in connection with the EEO proceedings. *See Ziglar v. Abbasi, 582 U.S. 120, 140 (2017)* ("Furthermore, a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation . . . .").

Accordingly, Plaintiff fails to state any due process claim against the Defendants that would not otherwise be barred by the *Feres* doctrine.

12

## V.    CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, the Court recommends granting Defendants' motion to dismiss.

Furthermore, the Court does not recommend giving Plaintiff leave to amend. Plaintiff's claims involve military personnel decisions and are thus barred from review by this Court under the *Feres* doctrine. Further, she has no viable due process claim based on the EEO proceedings, and regardless, there are no facts that any Defendant personally participated in the alleged denial of due process to support her *Bivens* and § 1983 claims. As such, leave to amend would be futile.

For the reasons explained above, IT IS RECOMMENDED that:

1. Defendants' Motion to Dismiss (ECF No. 12) be granted and this case be dismissed with prejudice and without granting leave to amend based on the *Feres* doctrine and failure to state a claim upon which relief may be granted.

2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. Any objections shall be limited to no more than fifteen (15) pages, including exhibits.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 28, 2026**                          /s/ Erica P. Grosjean
                                                          UNITED STATES MAGISTRATE JUDGE

13